USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/21/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HATTIE FERNANDEZ,

                    Plaintiff,

                  -v-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                    Defendant.
------------------------------------------------------------------X

13 Civ. 3183 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

      Plaintiff Hattie Fernandez seeks review of the decision by defendant Commissioner of Social Security ("the Commissioner") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI") applications.

      On December 15, 2011, plaintiff applied for DIB and SSI, alleging that she had been disabled since June 1, 2011. (Tr. 9, 138, 152.) The Commissioner denied plaintiff's applications on initial review (Tr. 93-98), after which she requested an administrative hearing (Tr. 99-103). On September 13, 2012, plaintiff appeared with her attorney before administrative law judge ("ALJ") Paul Heyman. (Tr. 43-89.) The ALJ considered the case <u>de novo</u> and issued a decision finding that plaintiff was not disabled on December 6, 2012. (Tr. 8-23.) On March 14, 2013, the Appeals Council denied plaintiff's request for review. (Tr. 1-6.)

      On May 10, 2013, plaintiff filed this action seeking judicial review of the ALJ's decision. (ECF No. 1.) Now before the Court are plaintiffs January 6, 2014

motion for judgment on the pleadings and defendant's January 25, 2014 cross-motion for judgment on the pleadings. (ECF Nos. 15, 19.) For the reasons set forth below, plaintiff's motion is DENIED and defendant's motion is GRANTED.

I.   FACTUAL BACKGROUND

The Court recites here only those facts relevant to its review.[1] The Court reviews the ALJ's decision to determine whether there is substantial evidence to support his finding that plaintiff was not disabled because jobs existed in significant numbers in the national economy that she could perform.

A.   Non-Medical Evidence

In a March 2012 statement, plaintiff wrote that her typical day involved, inter alia, getting her children ready for school and picking them up from school, cleaning up, and bathing. (Tr. 166.) She managed the home, shopped for groceries, took care of the children, and did laundry and dishes, but she needed help mopping and sweeping the floor. (Tr. 166, 168.) Plaintiff's application further stated that she left the house three times per day (to pick up her children from school and to walk her dog twice); she attended church up to three times per week. (Tr. 168, 170.)

At her September 2012 hearing, plaintiff testified that she had joint, leg, and pelvic pain, torn ligaments, torn tendons, and ankle sprains, and that she used a cane. (Tr. 49, 55, 60, 72.) Plaintiff stated that she left her apartment once a week and received help from others with household chores. (Tr. 67, 68, 70.) Plaintiff testified that she could stand for up to 20 minutes with a cane, could walk up to half

---

[1] A thorough summary of plaintiff's medical history is set forth in the administrative record.

a block, and could sit for about five minutes without difficulty.  (Tr. 79.)  She also claimed that she could not lift her leg high enough to get into her bathtub.  (Tr. 80.)

Plaintiff also testified that she had depression and bipolar disorder that affected her concentration and caused periods of anger and mania.  (Tr. 51, 55, 62, 71, 72.)  She took lithium for her mental condition.  (Tr. 52, 53.)  Plaintiff did not receive treatment from a psychologist or psychiatrist, but only from her general practitioner, Dr. Jonathan Greenberg.  (Tr. 52.)  Plaintiff stated that she experienced headaches about four times each week, each of which lasted for two to three days.  (Tr. 74.)  She believed that a prescribed medication, Topamax, caused her approximately five seizures since 2006, so she discontinued using the drug.  (Tr. 75, 76.)  Plaintiff's best friend, Nancy Vega, testified that plaintiff had had a seizure the night before the hearing and lost consciousness for one hour (although plaintiff testified that she had not had a seizure in months), and that plaintiff complained of constant pain and sometimes became depressed or upset.  (Tr. 84.)

B.  <u>Medical Evidence During the Relevant Period</u>

In June 2011, an examination of plaintiff by Dr. Greenberg was normal with a full range of motion; the doctor indicated that plaintiff smoked every day and was obese.  (Tr. 332.)  In October 2011, plaintiff complained of joint and muscle pain and left hand swelling; Dr. Greenberg noted that plaintiffs thyroid was enlarged but reported a full range of musculoskeletal motion and that her neurologic system was alert and oriented.  (Tr. 357.)  Plaintiff's diagnosis included unspecified joint pain,

unspecified goiter, unspecified bipolar disorder, and irritable bowel syndrome ('IBS'). (Tr. 357, 358.)

In October 2011, Dr. Eric Epstein found that plaintiff was well developed and in no acute distress; she had no deformities of any kind; her lungs were clear; and she had a normal full range of motion in all joints, normal reflexes and strength, and a normal mood and affect. (Tr. 383.) Dr. Epstein's impression was Hashimoto's thyroiditis and an unspecified goiter. (Tr. 383, 384.) An October 2011 trans-vaginal and trans-abdominal pelvic ultrasound study was normal. (Tr. 274.)

In November 2011, Dr. Banks found that plaintiff was well developed and in no acute distress. (Tr. 405.) In December 2011, testing revealed a borderline low thyroid with possible symptoms; Dr. Greenberg prescribed medication. (Tr. 418.) In January and February 2012, Dr. Epstein noted that plaintiffs lymph nodes were stable; he advised plaintiff to see a therapist for her depression. (Tr. 438, 439.)

In February 2012, Dr. Greenberg found that plaintiff had a full range of musculoskeletal motion and that her neurologic system was alert and oriented. (Tr. 444.) Dr. Greenberg recommended that plaintiff exercise and quit smoking. (Tr. 445.) In March 2012, he noted that a recent Lupron injection had reduced plaintiff's abdominal pain; he also reduced plaintiff's lithium dosage. (Tr. 465.)

On April 3, 2012, Dr. Arlene Broska, a consulting psychologist, found that plaintiff was cooperative; her affect was of full range and appropriate, and her mood was neutral; her attention and concentration were intact, and her memory was normal; and her intellectual functioning was average, but her judgment was fair to

4

poor. (Tr. 221, 222.) She further opined that plaintiff could, inter alia, understand and follow simple directions, perform simple and complex tasks independently, maintain a regular schedule, make appropriate decisions, and relate adequately. (Tr. 222, 223.) Dr. Broska stated that plaintiff's psychiatric problems were not significant enough to interfere with plaintiff's ability to function on a daily basis; she diagnosed plaintiff with, inter alia, bipolar disorder; a history of cannabis and cocaine abuse; a history of Hashimoto disease, endometriosis, and IBS; and back and foot pain. (Tr. 223.)

Also on April 3, 2012, Dr. Marilee Mescon, a consulting internal medicine physician, observed, inter alia, that plaintiff's gait was normal; that she could walk on her heels and toes and squat fully; that she used no assistive devices; that her spine, shoulders, hips, and joints had a full range of motion; and that her joints were stable and not tender. (Tr. 227, 228.) The doctor diagnosed plaintiff with hypothyroidism, headaches, asthma, a history of varicose vein surgery, and a history of marijuana and cocaine abuse. (Tr. 228.) Dr. Mescon opined that plaintiff had no limitations in her ability to sit, stand, climb, push, pull, or carry heavy objects; because of plaintiff's history of asthma, however, she did not recommend environments where there was toxic dust, chemicals, or fumes. (Tr. 228, 229.)

On April 19, 2012, Dr. V. Reddy, a state agency psychologist, found that, while plaintiff had no significant limitations in most categories, she had moderate limitations in the ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms, to accept instructions and criticism, and to set realistic goals and make plans. (Tr. 250, 251.)

On April 28, 2012, Dr. Greenberg again found that plaintiff had a full range of musculoskeletal motion, including in her extremities; he encouraged plaintiff to exercise. (Tr. 491, 492.) On June 20, 2012, an examination by Dr. Banks was normal; Dr. Banks prescribed Flexeril for plaintiff's pelvic pain. (Tr. 505.) On June 27, 2012, plaintiff reported to Dr. Greenberg that she was "going crazy," was anxious, and lacked self-control. (Tr. 507.) Dr. Greenberg renewed plaintiff's prescriptions. (Tr. 507, 508.) An August 14, 2012 MRI of plaintiff's pelvis was unremarkable. (Tr. 518.)

On September 13, 2012, Dr. Greenberg completed several forms, as follows:

- On an "anxiety questionnaire," Dr. Greenberg indicated that plaintiff had, <u>inter alia</u>, persistent anxiety, persistent irrational fear, recurrent severe panic attacks, and a complete inability to function independently outside the home. (Tr. 532, 533.)

- On a "walking questionnaire," Dr. Greenberg opined that plaintiff suffered severe pain and needed an assistive device to walk. (Tr. 534.) Asked to specify the medically determinable impairment that caused plaintiff's pain, the doctor specified none. (<u>Id.</u>)

- On a "bipolar or manic depressive questionnaire," Dr. Greenberg indicated that plaintiff had, <u>inter alia</u>, sleep disturbance, decreased energy, difficulty concentrating, thoughts of suicide, and marked

6

restriction in activities of daily living and in maintaining social functioning. (Tr. 536, 537.)

- On a "mental residual functional capacity form," Dr. Greenberg indicated that plaintiff had moderate to severe impairments in such areas as relating to others, carrying out instructions, responding to supervisors and coworkers, and performing work tasks; the doctor stated that plaintiff's medication had a "severe" effect on her ability to function. (Tr. 539, 540.)

- On a "residual functional capacity form," Dr. Greenberg opined that plaintiff could sit up to two hours per day; that she could not walk or stand at all; that she could never lift more than 10 pounds; and that she had poor focus and was unable to complete tasks. (Tr. 541.)

## II. STANDARDS OF REVIEW

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted).

B.  The Disability Standard

The Commissioner will find a claimant disabled under the Social Security Act ("the Act") if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P, App. 1 ["Appendix 1"]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity [RFC] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

C.   <u>Review of the ALJ's Judgment</u>

The Commissioner and ALJ's decisions are subject to limited judicial review. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).  The factual "findings of the [Commissioner] are conclusive unless they are not supported by substantial evidence." <u>Diaz v. Shalala</u>, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted).

The Court must consider the record as a whole in making this determination, but it is not for this Court to decide <u>de novo</u> whether the plaintiff is disabled.  <u>See Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."); <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998).

The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists.  <u>See</u> <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1182-83 (2d Cir. 1998); <u>Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

III.    DISCUSSION

The ALJ correctly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 1, 2011.  (Tr. 13.)  At step two, the ALJ found that plaintiff had six severe impairments: mood disorder, hypothyroidism, headaches, endometriosis, asthma, and obesity.  (Tr. 14)  However, the ALJ properly found that plaintiff's alleged seizure condition was not severe (Tr. 14), because the seizures stopped once she stopped taking Topamax, there is no record of her receiving treatment for seizures, and she reported to Dr. Mescon that she had no history of seizures (Tr. 76-78).  Plaintiff thus failed to meet her burden to show that her seizures constituted a severe impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step three, the ALJ determined that none of plaintiff's impairments was equal in severity to one listed in Appendix 1.  (Tr. 14.)  Plaintiff contests the ALJ's finding at step three with respect to affective and anxiety disorders.  She argues that, according to the questionnaires that Dr. Greenberg completed, plaintiff met the criteria of §§ 12.04 and 12.06 of Appendix 1, because plaintiff had, inter alia, marked restriction of activities of daily living, in maintaining social functioning, and in maintaining concentration, as well as repeated episodes of decompensation and a complete inability to function outside one's home.  See Appendix 1 § 12.04(B)-(C).  However, as the ALJ appropriately found, the record including Dr. Greenberg's own treatment notes does not provide evidence of mental limitations to support Dr.

10

Greenberg's opinion. (See Tr. 17-22.) For example, plaintiff rarely complained to Dr. Greenberg of psychological symptoms; rather, Dr. Greenberg often noted that plaintiff was in no distress and was alert and oriented. (See, e.g., Tr. 357, 399, 444, 451.) Similarly, Dr. Banks and Dr. Epstein noted that plaintiff was alert and had a normal mood and affect. (Tr. 405, 505, 383.)

Thus, the ALJ appropriately relied instead on Dr. Broska's opinion, which opined that plaintiff could function on a daily basis (Tr. 222, 223), and plaintiff's testimony about her daily activities, which generally reflected that plaintiff could function independently (Tr. 20). Under these circumstances, the ALJ was entitled to dismiss Dr. Greenberg's opinion, because "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts" and Dr. Greenberg's own notes. Halloran, 362 F.3d at 32; see also Balsamo v. Chater, 142 F.3d 75, (2d Cir. 1998) (explaining that an ALJ is free to choose between properly submitted medical opinions).

Before reaching step four, the ALJ assessed plaintiff's RFC and found that plaintiff could perform "less than the full range of light work." (Tr. 17.) According to the ALJ, plaintiff could lift up to 10 pounds occasionally and lift/carry up to 10 pounds frequently; could stand/walk for about six hours and sit for up to six hours in an eight-hour workday; that plaintiff must avoid exposure to unprotected heights and certain irritants; and that plaintiff must be limited to unskilled work. (Id.)

Plaintiff argues that the ALJ erred at this step by improperly evaluating plaintiff's credibility and her subjective claims of pain and limitations, such as, <u>inter alia</u>, her joint, leg, and pelvic pain, her inability to stand or sit for long periods, and her inability to bathe.  (Tr. 49, 55, 72, 79-81.)  However, as the ALJ found, the record does not support plaintiff's subjective complaints.  For example, while plaintiff received some sporadic treatment for joint pain, numerous examination reports stated that plaintiff's musculoskeletal range of motion or her extremity range of motion was full and normal.  (<u>See, e.g.</u>, Tr. 228, 332, 383, 444.)  Dr. Mescon further reported that plaintiff's gait was normal and that she did not use a cane.  (Tr. 227.)  Additionally, while plaintiff claimed to have constant, excruciating endometrial (abdominal) pain (Tr. 72, 73), examination revealed that plaintiff was not in distress and that her abdomen was not tender (Tr. 228, 309, 451, 471, 515).

Under these circumstances, where plaintiff's testimony conflicted with medical records, the ALJ appropriately dismissed plaintiff's subjective complaints and instead supported his determination of plaintiff's RFC with other substantial evidence of record.  <u>See</u> <u>Brandon v. Bowen</u>, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) ("[T]he ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged.").  Even if, <u>arguendo</u>, substantial evidence existed to support either finding, this Court must defer to the opinion of the ALJ.  <u>See</u> <u>Alston</u>, 904 F.2d at 126.

At step four, the ALJ determined that plaintiff could no longer perform her past relevant work, because the physical and mental demands of her past occupations exceeded her current RFC. (Tr. 22.) Therefore, the ALJ proceeded to step five, and found that plaintiff could perform work that existed in the national and local economy based on her age, education, experience, and RFC. (Tr. 22, 23.) Substantial evidence supported the ALJ's finding that plaintiff was capable of performing the basic physical and mental demands of unskilled work. For example, Dr. Mescon opined that plaintiff had no limitations in her ability to sit or stand (Tr. 228), and Dr. Broska opined that plaintiff's psychiatric problems were not significant enough to interfere with plaintiff's ability to function on a daily basis (Tr. 223). As set forth above, these opinions were more consistent with the record, including Dr. Greenberg's treatment notes, than the questionnaires that Dr. Greenberg completed in September 2012.

Thus, the ALJ correctly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920 and supported his decision with substantial evidence at each step. Accordingly, this Court must uphold the ALJ's decision. See, e.g., Shaw, 221 F.3d at 131.

IV.  CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is DENIED and defendant's cross-motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to close the motion at ECF Nos. 15 and 19 and to terminate this action.

SO ORDERED.

Dated:   New York, New York
　　　　 March 21, 2014

_____
KATHERINE B. FORREST
United States District Judge